[No. B017415. Second Dist., Div. One. Mar. 5, 1987.]

CITY OF ANAHEIM, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents;
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Real Party in Interest and Respondent.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, III, IV, and V of the Discussion section.

**COUNSEL**

Ross & Scott, William D. Ross and Diana P. Scott for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Chief Assistant Attorney General, Henry G. Ullerich and Martin H. Milas, Deputy Attorneys General, for Defendants and Respondents.

No appearance for Real Party in Interest and Respondent.

**OPINION**

**DEVICH, J.**— The City of Anaheim (hereafter City) sought reimbursement for costs it allegedly incurred as a result of the enactment of Assembly Bill

No. 2674 (Stats. 1980), chapter 1244, page 4220 (hereafter 1244/80). The State Board of Control (hereafter Board) denied City's claim. City thereafter filed a petition in the superior court seeking a writ of mandate and declaratory relief. City now appeals from the judgment denying its petition. We affirm.

PROCEDURAL HISTORY

On October 19, 1981, City filed a "test claim" (former Rev. & Tax. Code, § 2218, subd. (a)) seeking reimbursement of the $153,614.61 it alleged it incurred during the 1981 fiscal year to comply with 1244/80. This test claim was amended on May 6, 1982. As amended, the test claim alleged the following bases for reimbursement: (1) the transfer of funds out of the Public Employees' Retirement System's (hereafter PERS) reserve for deficiencies account caused a reduction in the interest credited to City's account thereby requiring a higher employer contribution rate; (2) 1244/80 removed City's former option of negotiating with its employees to increase the cost of living allowance; and (3) 1244/80 increased the cost of an existing program or service.

On August 12, 1982, Board conducted a hearing regarding City's test claim. On September 30, 1982, Board adopted a written statement in support of its decision to deny City's test claim.

On April 20, 1983, the superior court issued a writ of mandate commanding Board to hold a further hearing and issue a proper statement of findings.

Board conducted another hearing on February 16, 1984, but deadlocked two to two on whether to find a state-mandated cost.

City resubmitted its test claim pursuant to former Revenue and Taxation Code section 2252 on February 21, 1984. After conducting a hearing, Board denied City's test claim on March 28, 1984. Board adopted a written statement in support of its decision on May 31, 1984.

On October 24, 1984, City filed a petition in the superior court seeking a writ of mandate and declaratory relief. Judgment denying the requested relief was filed on October 8, 1985.

1244/80

1244/80 added former section 21231 to the Government Code. This section required the Board of Administration of PERS to transfer all funds

in the Public Employees' Retirement Fund's reserve for deficiencies account that exceeded 2 percent of the total assets in the retirement fund to a special account to be used for a temporary increase in benefits received by retired public employees.

## LOCAL GOVERNMENTS' RIGHT TO REIMBURSEMENT

Article XIII B, section 6, of the California Constitution (hereafter section 6) provides: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds for the following mandates: [¶] (a) Legislative mandates requested by the local agency affected; [¶] (b) Legislation defining a new crime or changing an existing definition of a crime; or [¶] (c) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975."

At the time the test claim in the case at bench was filed, former Revenue and Taxation Code section 2231, subdivision (a), required the state to reimburse local agencies for all "costs mandated by the state." Among the definitions of this term contained in Revenue and Taxation Code section 2207 are the following: "[A]ny increased costs which a local agency is required to incur as a result of the following: [¶] (a) Any law enacted after January 1, 1973, which mandates a new program or an increased level of service of an existing program; [ ] [¶] (f) Any statute enacted after January 1, 1973, . . . which (i) removes an option previously available to local agencies and thereby increases program or service levels or (ii) prohibits a specific activity which results in the local agencies using a more costly alternative to provide a mandated program or service. [ ] [¶] (h) Any statute enacted after January 1, 1973, . . . which adds new requirements to an existing optional program or service and thereby increases the cost of such program or service if the local agencies have no reasonable alternatives other than to continue the optional program."

Statutes 1986, chapter 879, sections 6 and 23 repealed Revenue and Taxation Code section 2231, subdivision (a), and added the similar provision of Government Code section 17561, subdivision (a). "Costs mandated by the state" is now defined as "any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute enacted on or after January 1, 1975, . . . which mandates a new program or higher level of service of an existing program within the meaning of Section 6 of Article XIII B of the California Constitution." (Gov. Code, § 17514.)

CITY'S CONTENTIONS

On appeal, City contends: (1) that the trial court neglected to apply Government Code section 17500 et seq. to the case at bench; (2) that the trial court erroneously analyzed section 6; (3) that Board abused its discretion in that its findings are not supported by substantial evidence and that it did not proceed in the manner prescribed by law; (4) that Board's decision was not supported by adequate findings; and (5) that it is entitled to attorneys' fees.

DISCUSSION

I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

II. Does section 6 require reimbursement to City? No.

City contends that since 1244/80 does not fall within any of the exceptions to reimbursement listed in section 6, the trial court abused its discretion in failing to order reimbursement. While focusing on the exceptions to reimbursement, City conveniently presumes that 1244/80 mandated a higher level of service on local government, a prerequisite to reimbursement when an existing program is modified.

City's claim for reimbursement must fail for the following reasons: (1) 1244/80 did not compel City to do anything, (2) any increase in cost to City was only incidental to PERS' compliance with 1244/80, and (3) pension payments to retired employees do not constitute a "program" or "service" as that term is used in section 6.

1244/80 required PERS, a state agency, to increase pension payments to retired public employees. Local governments were not responsible for making these payments since the money came out of an existing reserve fund already under PERS' control. ■ Once contributed, PERS funds constitute a trust fund held for the benefit of PERS members and beneficiaries. (*Valdes* v. *Cory* (1983) 139 Cal.App.3d 773, 788 [189 Cal.Rptr. 212].) Therefore, City had no right to directly control the manner in which these funds were spent provided the funds were used for a purpose beneficial to PERS members. (*Ibid.*)

City maintains that PERS' compliance with 1244/80 caused a reduction in the interest credited to its account by PERS which resulted in a higher contribution rate to the fund. While it may be true that the removal of money from the reserve for deficiencies account caused City to incur a higher contri-

---

*See footnote, *ante,* page 1478.

bution rate as an employer, PERS was under no legal obligation to credit City's account with excess interest earned on PERS funds. Therefore, any increase in City's contribution rates due to the absence of excess interest credit enjoyed in previous years would have been merely incidental to PERS' compliance with 1244/80.

■ Finally, we conclude that 1244/80's temporary increase in pension benefits to retired public employees does not constitute a "program" or "service" as these terms are used in section 6.

In *County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46 [233 Cal.Rptr. 38], our Supreme Court addressed the issue of whether section 6 required reimbursement to local governments for state statutes that increased certain workers' compensation benefit payments. The court concluded that "when the voters adopted article XIII B, section 6, their intent was not to require the state to provide subvention whenever a newly enacted statute resulted incidentally in some cost to local agencies. Rather, the drafters and the electorate had in mind subvention for the expense or increased cost of programs administered locally and for expenses occasioned by laws that impose unique requirements on local governments and do not apply generally to all state residents or entities. In using the word 'programs' they had in mind the commonly understood meaning of the term, programs which carry out the governmental function of providing services to the public." (*Id.,* at pp. 49-50.)

The court further stated that "section 6 has no application to, and the state need not provide subvention for, the costs incurred by local agencies in providing to their employees the same increase in workers' compensation benefits that employees of private individuals or organizations receive. Workers' compensation is not a program administered by local agencies to provide service to the public. Although local agencies must provide benefits to their employees either through insurance or direct payment, they are indistinguishable in this respect from private employers[.] In no sense can employers, public or private, be considered to be administrators of a program of workers' compensation or to be providing services incidental to administration of the program. Workers' compensation is administered by the state . . . . Therefore, although the state requires that employers provide workers' compensation for nonexempt categories of employees, increases in the cost of providing this employee benefit are not subject to reimbursement as state-mandated programs or higher levels of service within the meaning of section 6." (*Id.,* at pp. 57-58, fn. omitted.)

City argues that since 1244/80 specifically dealt with pensions for *public* employees, it imposed unique requirements on local governments that did

not apply to all state residents or entities.[1] Such an argument, while appealing on the surface, must fail. As noted above, 1244/80 mandated increased costs to a state agency, not a local government. Also, PERS is not a program administered by local agencies.

Moreover, the goals of article XIII B of the California Constitution "were to protect residents from excessive taxation and government spending . . . [and] preclud[e] a shift of financial responsibility for carrying out governmental functions from the state to local agencies . . . . Bearing the costs of salaries, unemployment insurance, and workers' compensation coverage— costs which all employers must bear — neither threatens excessive taxation or governmental spending, nor shifts from the state to a local agency the expense of providing governmental services." (*County of Los Angeles* v. *State of California, supra,* 43 Cal.3d at p. 61.) Similarly, City is faced with a higher cost of compensation to its employees. This is not the same as a higher cost of providing services to the public.[2]

We therefor conclude that 1244/80 does not fall within the scope of section 6.

III.-V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

### DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

---

[1]City's argument was formerly supported by *City of Sacramento* v. *State of California* (1984) 156 Cal.App.3d 182 [203 Cal.Rptr. 258] wherein the court concluded that costs incurred by local governments in complying with a statute that required public employees to be covered by the state unemployment insurance law amounted to "costs mandated by the state" and therefore reimbursable under section 6. However, we note that the Supreme Court, in *County of Los Angeles* v. *State of California, supra,* 43 Cal.3d at page 58, footnote 10, disapproved of the *City of Sacramento* holding to the extent that it conflicted with that court's holding.

[2]In interpreting a reimbursement provision similar to section 6, the Washington Attorney General opined that increased contributions by a local taxing district to the public employee retirement system would not be reimbursable since "the increased costs represented only increased remuneration of existing employees and not any new or increased service to the general public." (*City of Seattle* v. *State* (1983) 100 Wn.2d 16 [666 P.2d 359, 363], citing Ops.Wash.Atty.Gen. 24 (1980).)

*See footnote, *ante,* page 1478.