[No. S000064. Mar. 14, 1988.]

LUCIA MAR UNIFIED SCHOOL DISTRICT et al., Plaintiffs and Appellants, v.
BILL HONIG, as Superintendent, etc., et al., Defendants and Respondents.

COUNSEL

Frank J. Fekete, Peter C. Carton, Joanne A. Velman, Stephen L. Hartsell, Dwaine L. Chambers and Roger R. Grass for Plaintiffs and Appellants.

Joseph R. Symkowick, Roger D. Wolfertz, Joanne Lowe, John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendants and Respondents.

OPINION

MOSK, J.—Section 59300 of the Education Code requires a school district to contribute part of the cost of educating pupils from the district at state schools for the severely handicapped. We must determine if that section imposes on a district a state-mandated "new program or higher level of service" for which the state must provide reimbursement under section 6 of article XIIIB of the California Constitution.[1] The constitutional provision, adopted by initiative in 1979, declares, with exceptions not relevant here, that "[w]henever the Legislature . . . mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service. . . ."

The resolution of the question before us turns on whether the contributions made by a district pursuant to section 59300 are used to fund "a new program or higher level of service" and, if so, whether the statute "mandates" that a district make the contribution set forth therein. We conclude that the contribution required by section 59300 is utilized to fund a "new program" as defined in the constitutional provision, but that it is not clear from the record whether districts are "mandated" to pay these costs. The matter will therefore be remanded to the Commission on State Mandates to make that determination.

The State Department of Education (department) operates schools for severely handicapped students, including schools for the deaf (§ 59000 et seq.), the blind (§ 59100 et seq.), and the neurologically handicapped (§ 59200 et seq.). Although prior to 1979, school districts were required by statute to contribute to the education of pupils from the districts at the state

---

[1] Hereafter all statutory references are to the Education Code unless otherwise noted, and all references to articles are to the California Constitution.

schools (former §§ 59021, 59121, 59221), these provisions were repealed in that year and on July 12, 1979, the state assumed the responsibility for full funding. (Stats. 1979, ch. 237, § 3, p. 493.) This responsibility existed when article XIIIB became effective on July 1, 1980 (art. XIIIB, § 10), and continued until section 59300 became effective on June 28, 1981. (Stats. 1981, ch. 102, § 17, p. 703.)

Section 59300 represents an attempt by the state to compel school districts to share in these costs. The section provides, "Notwithstanding any provision of this part to the contrary, the district of residence of the parent or guardian of any pupil attending a state-operated school pursuant to this part, excluding day pupils, shall pay the school of attendance for each pupil an amount equal to 10 percent of the excess annual cost of education of pupils attending a state-operated school pursuant to this part."[2]

Starting in 1981, the department attempted to collect the contributions called for in the section by sending invoices to the school district superintendents. When the invoices were not paid, their amount was deducted from the appropriations made by the state to the districts for the support of the schools.

The Government Code sets forth a procedure to determine whether a statute imposes state-mandated costs on a school district or other local agency under article XIIIB. (Gov. Code, § 17500 et seq.). The district must file a test claim with the Commission on State Mandates (commission) which, after a hearing, decides whether the statute mandates a "new program or increased level of service." (*Id.*, §§ 17521, 17551, 17556.) If a claim is found to be reimbursable, the commission must determine the amount to be reimbursed. (*Id.*, § 17557.) The code specifies the procedure to be followed by a local agency to obtain reimbursement if the commission has determined that reimbursement is due. (*Id.*, § 17558 et seq.) If the Legislature refuses to appropriate money to satisfy a mandate found to be reimbursable by the commission, a claimant may bring an action for declaratory relief to enjoin enforcement of the mandate. (*Id.*, § 17612, subd.(b).)[3] In the event the commission finds against the local agency, it may bring a proceeding in administrative mandate under section 1094.5 of the Code of Civil Procedure to challenge the commission's determination. (Gov. Code,

---

[2] "Excess annual cost" means the total cost of educating a pupil in a state-operated school less a school district's annual base revenue limit, multiplied by the estimated average daily attendance of the state-operated school.

[3] In *Carmel Valley Fire Protection Dist.* v. *State of California* (1987) 190 Cal.App.3d 521, 549 [234 Cal.Rptr. 795], the court observed that this remedy would afford relief only prospectively, and not as to funds previously paid out by a local agency to satisfy a state mandate.

§ 17559.) The procedure provided in the code is the exclusive means by which a local agency may claim reimbursement for mandated costs. (*Id.*, § 17552.)

In 1984 plaintiff Lucia Mar Unified School District and other school districts (plaintiffs) filed a test claim before the commission,[4] asserting that section 59300 requires them to make payments for a "new program or increased level of service," and that they are entitled to reimbursement pursuant to section 6 of article XIIIB. The commission denied the claim, finding no reimbursable mandate because, although section 59300 increased plaintiffs' costs for educating students at state-operated schools, it did not impose on the districts a new program or higher level of service.

Plaintiffs then filed a petition for writ of mandate, declaratory relief, and restitution against the commission, the State Superintendent of Public Instruction (superintendent), and the department. They sought a declaration that section 59300 violates section 6 of article XIIIB, and prayed for orders to compel the commission to reverse its determination, and the superintendent and the department to reimburse them for the amounts withheld under the authority of section 59300. The trial court affirmed the commission's decision. It, too, held that section 59300 does not mandate a new program or higher level of service, finding that the section only calls for an "adjustment of costs."[5]

The court held, further, that it had no jurisdiction to issue orders to the superintendent to refund the sums withheld from plaintiffs because the commission's decisions may only be challenged by a proceeding in administrative mandate under section 1094.5 of the Code of Civil Procedure. (Gov. Code, §§ 17552, 17559.) Plaintiffs appealed. The Court of Appeal affirmed the judgment, reasoning that a shift in the funding of an existing program is not a new program or a higher level of service. It declined to rule whether restitution from the superintendent was an appropriate remedy.

The commission argues before this court, as it did below, that section 59300 does not mandate a new program or a higher level of service. The superintendent and the department express no opinion as to the merits of plaintiffs' assertions, but argue that if we should find a reimbursable mandate, plaintiffs' remedy is to seek an appropriation from the Legislature rather than reimbursement from the department.

---

[4] The claim was originally filed with the State Board of Control, which preceded the commission; when the commission was created in 1984, the claim was transferred to it for determination.

[5] The court found that this "adjustment" was "precipitated" by the Special Education Program, enacted in 1980 (Stats. 1980, ch. 797, § 9, p. 2411 et seq.), discussed in a later part of this opinion, which afforded local governments certain options to educate the handicapped.

We recognize that, as is made indisputably clear from the language of the constitutional provision, local entities are not entitled to reimbursement for all increased costs mandated by state law, but only those costs resulting from a new program or an increased level of service imposed upon them by the state. In keeping with this principle, we recently held in *County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46 [233 Cal.Rptr. 38, 729 P.2d 202] that legislation requiring local governments and other employers to increase certain workers' compensation benefits did not invoke the subvention requirement because the state mandate did not provide for a "program." We reasoned that the additional expense to the local agency mandated by the legislation arose as an incidental impact of a law which applied generally to all state residents and entities, and this type of expense was not what the voters had in mind when they adopted section 6 of article XIIIB. (See also *City of Anaheim* v. *State of California* (1987) 189 Cal.App.3d 1478, 1484 [235 Cal.Rptr. 101].)

We defined a "program" as used in article XIIIB as one that carries out the "governmental function of providing services to the public, or laws which, to implement a state policy, impose unique requirements on local governments and do not apply generally to all residents and entities in the state." (*County of Los Angeles, supra,* 43 Cal.3d at p. 56.) Unquestionably the contributions called for in section 59300 are used to fund a "program" within this definition, for the education of handicapped children is clearly a governmental function providing a service to the public, and the section imposes requirements on school districts not imposed on all the state's residents. Nor can there be any doubt that although the schools for the handicapped have been operated by the state for many years, the program was new insofar as plaintiffs are concerned, since at the time section 59300 became effective they were not required to contribute to the education of students from their districts at such schools.

The fact that the impact of the section is to require plaintiffs to contribute funds to operate the state schools for the handicapped rather than to themselves administer the program does not detract from our conclusion that it calls for the establishment of a new program within the meaning of the constitutional provision. To hold, under the circumstances of this case, that a shift in funding of an existing program from the state to a local entity is not a new program as to the local agency would, we think, violate the intent underlying section 6 of article XIIIB. That article imposed spending limits on state and local governments, and it followed by one year the adoption by initiative of article XIIIA, which severely limited the taxing power of local governments. ■ Section 6 was intended to preclude the state from shifting to local agencies the financial responsibility for providing public services

in view of these restrictions on the taxing and spending power of the local entities. (See *County of Los Angeles, supra,* 43 Cal.3d at p. 61.)[6]

▮ The intent of the section would plainly be violated if the state could, while retaining administrative control of programs it has supported with state tax money, simply shift the cost of the programs to local government on the theory that the shift does not violate section 6 of article XIIIB because the programs are not "new." Whether the shifting of costs is accomplished by compelling local governments to pay the cost of entirely new programs created by the state, or by compelling them to accept financial responsibility in whole or in part for a program which was funded entirely by the state before the advent of article XIIIB, the result seems equally violative of the fundamental purpose underlying section 6 of that article.[7] We conclude, therefore, that because section 59300 shifts partial financial responsibility for the support of students in the state-operated schools from the state to school districts—an obligation the school districts did not have at the time article XIIIB was adopted—it calls for plaintiffs to support a "new program" within the meaning of section 6.[8]

The question remains whether school districts are "mandated" by section 59300 to make the contributions called for therein. The commission claims that plaintiffs are not compelled to contribute to the education of handicapped children at the state schools because they possess other options to educate such students. In 1980, the Legislature passed a law codified in the Education Code, which requires local education agencies to assess the needs

---

[6] The Revenue and Taxation Code also contains provisions requiring reimbursement of local agencies for state-mandated costs. (Rev. & Tax Code, § 2201 et seq.) These provisions were enacted before the adoption of article XIIIB (Stats. 1973, ch. 358, § 3, p. 780), but the principle of reimbursement was enshrined in the Constitution in 1979 with the adoption of section 6 of article XIIIB to provide local entities with the assurance that state mandates would not place additional burdens on their increasingly limited revenue resources.

[7] There is a statement in *County of Los Angeles, supra,* that a concern prompting the adoption of section 6 in article XIIIB "was the perceived attempt by the state to enact legislation or adopt administrative orders creating programs to be administered by local agencies, thereby transferring to those agencies the fiscal responsibility for providing services which the state believed should be extended to the public." (43 Cal.3d at p. 56.) We do not read the phrase "administered by local agencies" to mean that the electorate intended that only locally administered programs require state reimbursement. The underlying premise of the sentence is that reimbursement is required if the state transfers fiscal responsibility to a local agency for a program the state deems desirable.

[8] An opinion of the Attorney General, relied on by the commission, is inapposite. It suggests that a law increasing the number of judges in a municipal court district does not constitute a higher level of service under section 6 of article XIIIB because the district has a constitutional obligation to provide for an adequate number of judges. (63 Ops.Cal.Atty.Gen. 700, 702. (1980)) In the present case, the issue is whether section 59300 involves a new program rather than a higher level of service, and it is clear that at the time the section was enacted, plaintiffs did not have an obligation to contribute to the support of the students from their districts at the state schools for the severely handicapped.

of handicapped pupils residing in their districts, and to formulate an appropriate plan to educate them. (§ 56000 et seq.)

The commission asserts that a local agency has the option under section 56361 to provide a local program for handicapped children, to send them to private schools, or to refer them to the state-operated schools. At the hearing before the commission, the Department of Finance recommended that the commission find that section 59300 does not impose a state mandate because plaintiffs were not required to send students from their districts to the state schools but had the additional options described in section 56361. The commission staff recommended against adoption of this position on the ground that the plaintiffs "had no other reasonable alternative than to utilize the services of the state-operated schools, as they are the least expensive alternative in educating handicapped children."[9]

The commission did not and was not required to decide whether section 59300 constitutes a state mandate since it concluded that plaintiffs were not entitled to reimbursement in any event because the section does not provide for a new program or increased level of service. The issue is for the commission to determine, as it is charged by section 17551 of the Government Code with the duty to decide in the first instance whether a local agency is entitled to reimbursement under section 6 of article XIIIB.

In view of our conclusion that the question whether section 59300 amounts to a state mandate must be remanded to the commission, we do not decide whether, as the superintendent and the department argue, plaintiffs' sole remedy, in the event a reimbursable mandate is ultimately found, is to seek relief under the procedure set forth in section 17500 et seq. of the Government Code.

■ The final question is whether the superintendent and the department acted in excess of their authority in deducting the amount of the contributions required of plaintiffs by section 59300 from the funds appropriated by the state to them for the support of the districts' schools. Plaintiffs cite no authority for the proposition that such conduct was improper. Section 59300 does not specify the method by which the contributions of the school districts to the state schools shall be paid. We agree with the Court of Appeal that in these circumstances the method of collection is left to the reasonable discretion of the department, and in view of the fact no test claim had been filed when the school districts failed to pay the invoices, the

---

[9]According to the Department of Finance, in 1979-1980, the average cost to educate a student in a local program was $5,527, for private school the cost was $9,527, and for the least expensive state school $15,556. The local agency is required to pay 30 percent of the cost for students placed in private schools.

method of collection the Department chose was not unreasonable. (See, e.g., *Carmel Valley Fire Protection Dist.* v. *State of California, supra,* 190 Cal.App.3d 521, 550.)

The judgment of the Court of Appeal is reversed, and the court is directed to remand the matter to the commission for further proceedings consistent with this opinion.

Lucas, C. J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.

The petition of respondent Commission on State Mandates for a rehearing was denied April 27, 1988.