[No. C005023. Third Dist. Oct. 27, 1989.]

COUNTY OF LOS ANGELES, Plaintiff and Appellant, v. DEPARTMENT OF INDUSTRIAL RELATIONS et al., Defendants and Respondents.

COUNSEL

De Witt W. Clinton, County Counsel, and Paul T. Hanson, Deputy County Counsel, for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Richard M. Frank and Linda A. Cabatic, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**CARR, J.**—In this appeal from summary judgment in favor of defendant State Department of Industrial Relations (State), plaintiff County of Los Angeles (County) asserts rights to reimbursement for programs alleged to be state mandated. County filed a complaint and petition for mandate claiming reimbursement from State for costs incurred in complying with new elevator earthquake and fire safety regulations promulgated by the California Occupational Safety and Health Administration (OSHA). The trial court concluded these regulations did not constitute a state-mandated program requiring reimbursement and entered summary judgment for State.

County urges three alternative bases of recovery on appeal: (1) principles of administrative collateral estoppel preclude State from relitigating whether the safety regulations amount to a state-mandated program; (2) even if State is not bound by an earlier administrative decision, the definition of "program" articulated in *County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46 [233 Cal.Rptr. 38, 729 P.2d 202] (*Los Angeles*) and relied upon by the trial court is inapplicable to this case; and (3) even if *Los Angeles* applies, the OSHA regulations fit its definition.[1] We disagree with each claim and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1975, OSHA added or amended numerous elevator fire and earthquake safety measures in title 8 of the California Code of Regulations (i.e., §§ 3014, subds. (c), (d), 3015, subd. (c), 3030, subds. (f), (k), 3032, subds.

---

[1] The first portion of County's brief is devoted to arguing a nonissue, i.e., why a separation of powers issue is not pertinent to this appeal. As the trial court granted summary judgment in favor of State, it did not decide how to order reimbursement or provide other relief without impinging on the Legislature's authority. County is right—the separation of powers question is irrelevant and we do not consider it.

(a), (c), 3034, subd. (a), 3041, subds. (c), (d), 3053, subd. (c), and 3111, subd. (c).)[2] These regulations applied to all elevators, whether publicly or privately owned.

At the time relevant herein, reimbursement provisions for expenses incurred in complying with state-mandated local programs were embodied in Revenue and Taxation Code sections 2201 et seq. Revenue and Taxation Code section 2231, subdivision (a) provided in part: "The state shall reimburse each local agency for all 'costs mandated by the state', as defined in Section 2207." (Stats. 1978, ch. 794, § 1.1, p. 2546.) That section stated: " 'Costs mandated by the state' means any increased costs which a local agency is required to incur as a result of the following: [¶] (a) Any law enacted after January 1, 1973, which mandates a new program or an increased level of service of an existing program; [¶] (b) Any executive order issued after January 1, 1973, which mandates a new program; [¶] (c) Any executive order issued after January 1, 1973, which (i) implements or interprets a state statute and (ii), by such implementation or interpretation, increases program levels above the levels required prior to January 1, 1973." (Stats. 1977, ch. 1135, § 4, p. 3646.)[3]

In 1979, voters enacted Proposition 4, adding article XIII B to the California Constitution. Section 6 of that article provides: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds for the following mandates: [¶] (a) Legislative mandates requested by the local agency affected; [¶] (b) Legislation defining a new crime or changing an existing definition of a crime; or [¶] (c) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975." This provision became effective July 1, 1980. (See Cal. Const., art. XIII B, § 10.)

---

[2] The regulations in question outline various safety measures such as (1) the securing of machinery and equipment, (2) elevator car enclosures, (3) emergency operations, and (4) the installation of guide rails, supports and fastenings.

[3] Revenue and Taxation Code section 2231 was repealed in 1986 (Stats. 1986, ch. 879, § 23, p. 3045) and reenacted as Government Code section 17561 (Stats. 1986, ch. 879, § 6, pp. 3041-3042). The definition of "costs mandated by the state" is now embodied in Government Code section 17514 and provides: " 'Costs mandated by the state' means any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute enacted on or after January 1, 1975, or any executive order implementing any statute enacted on or after January 1, 1975, which mandates a new program or higher level of service of an existing program within the meaning of Section 6 of Article XIII B of the California Constitution."

These statutory and constitutional provisions granted relief to local governments whose powers to raise property taxes had been curtailed but who were still subject to increased expenses through the imposition of state-mandated local programs. (*Lucia Mar Unified School Dist.* v. *Honig* (1988) 44 Cal.3d 830, 835-836 [244 Cal.Rptr. 677, 750 P.2d 318].) The state was now required to reimburse local governments for costs associated with these programs.

In 1979, the City and County of San Francisco sought reimbursement for the costs of complying with the elevator fire and earthquake safety regulations. The State Board of Control (Board) approved the claim, adopted "parameters and guidelines," and also adopted "statewide cost estimates" for these regulations. State did not seek review of the Board's decision although authorized to do so by former Revenue and Taxation Code section 2253.5 (Stats. 1978, ch. 794, § 8, p. 2551).

Despite the Board's decision, the Legislature did not appropriate funds for reimbursement, finding the elevator earthquake safety regulations did not impose reimbursable state-mandated costs. (Stats. 1982, ch. 1586, § 10, p. 6268.) The Legislature further stated it could not determine whether the elevator fire safety regulation imposed a reimbursable state-mandated cost and declared the operation of the regulation suspended "until a court determines whether this provision contains a mandate reimbursable under Section 2231 of the Revenue and Taxation Code." (Stats. 1982, ch. 1586, § 11, p. 6268.)

County subsequently filed a claim with the Board for reimbursement of costs already incurred in complying with the fire safety regulation and those anticipated in complying with the earthquake safety provisions. The Board informed County of the Legislature's decision not to provide subvention of funds for costs incurred in association with these OSHA regulations and denied the claim.

In October 1983, County filed its petition for writ of mandate and a complaint for declaratory and injunctive relief, and trial was eventually set for July 1988. In April 1988, State moved for summary judgment, asserting the elevator safety regulations did not meet the definition of "program" recently articulated in *Los Angeles, supra,* 43 Cal.3d 46. In that case, the Supreme Court considered whether local governments were entitled to reimbursement for costs incurred in complying with legislation increasing workers' compensation benefit payments. ▪ The court held programs were reimbursable under article XIII B only if they were "programs that carry out the governmental function of providing services to the public, or

laws which, to implement a state policy, impose unique requirements on local governments and do not apply generally to all residents and entities in the state." (*Id*. at p. 56.) The court concluded article XIII B "has no application to, and the State need not provide subvention for, the costs incurred by local agencies in providing to their employees the same increase in workers' compensation benefits that employees of private individuals or organizations receive." (*Id*. at pp. 57-58, fn. omitted.)

Relying on *Los Angeles*, State asserted the regulations did not constitute a "program" requiring reimbursement for costs incurred because they (1) applied to all elevators, both publicly and privately owned, and (2) did not require County to carry out a governmental function of providing services to the public. County disagreed, urging the *Los Angeles* definition was met and, further, that State was estopped to challenge the Board's earlier finding that the regulations imposed a reimbursable state-mandated cost. The trial court granted State's motion for summary judgment; this appeal followed. We shall affirm.

DISCUSSION

I

County asserts principles of administrative collateral estoppel preclude State from challenging the Board's earlier decision finding the elevator safety regulations to be a reimbursable state-mandated program. County errs.

In *Carmel Valley Fire Protection Dist.* v. *State of California* (1987) 190 Cal.App.3d 521 [234 Cal.Rptr. 795] (*Carmel Valley*), the court considered whether costs incurred in purchasing protective clothing and equipment for firefighters as required by new administrative regulations were state-mandated costs entitling the county to reimbursement. The court found the State was precluded from relitigating the issues of state mandate and amount of reimbursement because the Board had previously decided these issues in ruling on the county's claim and the State by failing to seek judicial review of the Board's decision waived its right to contest the Board's findings. (*Id*. at p. 534.) In reaching this conclusion, the court relied, inter alia, on principles of administrative collateral estoppel, which the court described as follows:

"Traditionally, collateral estoppel has been applied to bar relitigation of an issue decided in a prior court proceeding. In order for the doctrine to apply, the issues in the two proceedings must be the same, the prior

proceeding must have resulted in a final judgment on the merits, and the same parties or their privies must be involved. (*People* v. *Sims* (1982) 32 Cal.3d 468, 484 [].) [¶] The doctrine was extended in *Sims* to apply to a final adjudication of an administrative agency of statutory creation so as to preclude relitigation of the same issues in a subsequent criminal case. ■ Our Supreme Court held that collateral estoppel applies to such prior adjudications where three requirements are met: (1) the administrative agency acted in a judicial capacity; (2) resolved disputed issues properly before it; and (3) all parties were provided with the opportunity to fully and fairly litigate their claims. (*Id.* at p. 479.)" (*Carmel Valley, supra,* 190 Cal.App.3d at pp. 534-535.)

Although administrative collateral estoppel precluded the relitigation of certain issues, the *Carmel Valley* court noted the *Los Angeles* decision presented a new issue not previously considered by the Board, whether the regulations constitute the type of "program" requiring subvention of funds under article XIII B, section 6. (*Id.* at p. 537.) The court held, "State is not precluded from raising this new issue on appeal. Questions of law decided by an administrative agency invoke the collateral estoppel doctrine only when a determination of conclusiveness will not work an injustice. Likewise the doctrine of waiver is inapplicable if a litigant has no actual or constructive knowledge of his rights. Since the [*Los Angeles*] rule had not been announced at the time of the Board or trial court proceedings herein, the doctrines of waiver and collateral estoppel are inapplicable to State on this particular issue." (*Id.* at p. 537, fn. 10.)

■ The same principle is applicable in the instant case. Assuming arguendo that all of the elements of administrative collateral estoppel are met, the fact remains that the test claim involving the elevator safety regulations was filed with the Board in 1979, eight years before the *Los Angeles* rule was enunciated by our Supreme Court. Nothing in the record supports any assertion that the Board in 1979 considered if this was a program within the meaning of *Los Angeles*. Indeed the Board would have been preternaturally prescient if it had done so. State was free to raise the "program" question in its motion for summary judgment and we turn now to that issue.

## II

■ County asserts the *Los Angeles* decision does not apply to this case or, if it does, that the elevator safety regulations are a "program" as defined by *Los Angeles*. Both contentions are without merit.

County attempts to distinguish *Los Angeles* from the case at bar by relying on two differences: (1) in *Los Angeles,* the Board ruled against the local governments but here the Board ruled in County's favor; and (2) in *Los Angeles,* the court's ruling was compelled to avoid finding an implied repeal of the state constitution's provisions relating to worker's compensation; and here no constitutional problems are presented. County provides no further analysis of these distinctions and we find them meaningless. *Los Angeles* clearly established a definition of "program" to be used in determining whether reimbursement must be provided under article XIII B, and we are bound to follow that ruling. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

As noted, the *Los Angeles* court established two alternative meanings for the term "programs." Programs are reimbursable under article XIII B if they are "programs that carry out the governmental function of providing services to the public, or laws which, to implement a state policy, impose unique requirements on local governments and do not apply generally to all residents and entities in the state." (*Los Angeles, supra,* 43 Cal.3d at p. 56.)

County acknowledges the elevator safety regulations apply to all elevators, not just those which are publicly owned.[4] As these regulations do not impose a "unique requirement" on local governments, they do not meet the second definition of "program" established by *Los Angeles.*

Nor is the first definition of "program" met. County submitted a declaration by deputy county counsel providing: "It is my opinion that all of the buildings owned or leased by County are used for 'peculiarly governmental functions' or are used by County for purposes mandated by state law . . . . [¶] It is my opinion, . . . that in all buildings owned or leased by County which have elevators, those elevators are strictly necessary for the purposes [just] described. In other words, without those elevators no peculiarly governmental functions and no purposes mandated on County by State law could be performed in those County buildings. . . . It is my opinion that federal and state laws and court decisions about access for handicapped persons require elevators in all public buildings of more than one story." These thoughts had occurred to counsel only shortly before County's opposition to the summary judgment motion was due to be filed.

County asserts this declaration "proves that all passenger elevators in all county buildings are necessary for the performance of *peculiarly governmen-*

---

[4]An affidavit submitted by State in support of its motion for summary judgment established that 92.1 percent of the elevators subject to these regulations are privately owned, while only 7.9 percent are publicly owned or operated.

*tal functions* by County including *duties mandated* on County *by State.*" (Italics in original.) Even if we were to treat the submitted declaration as something more than mere opinion, County has missed the point. The regulations at issue do not mandate elevator service; they simply establish safety measures. In determining whether these regulations are a program, the critical question is whether the *mandated program* carries out the governmental function of providing services to the public, not whether the elevators can be used to obtain these services. Providing elevators equipped with fire and earthquake safety features simply is not "a governmental function of providing services to the public."[5]

As the regulations in question do not meet the definition of "program" established by *Los Angeles,* County was not entitled to reimbursement for costs incurred in complying with these provisions and the court properly granted State's motion for summary judgment.

### DISPOSITION

The judgment is affirmed. State to recover costs.

Puglia, P. J., and DeCristoforo, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 17, 1990.

---

[5] This case is therefore unlike *Lucia Mar, supra,* 44 Cal.3d 830, in which the court found the education of handicapped children to be a governmental function (44 Cal.3d at p. 835) and *Carmel Valley, supra,* where the court reached a similar conclusion regarding fire protection services. (190 Cal.App.3d at p. 537.)