64 Cal.App.4th 1190 (1998)
CITY OF RICHMOND, Plaintiff and Appellant,
v.
COMMISSION ON STATE MANDATES, Defendant and Respondent; DEPARTMENT OF FINANCE, Real Party in Interest and Respondent.
Docket No. C026835.
Court of Appeals of California, Third District.
May 28, 1998.
*1192 COUNSEL
Nossaman, Guthner, Knox & Elliott, Robert J. Sullivan, Stephen P. Wilman, John T. Kennedy and Scott N. Yamaguchi for Plaintiff and Appellant.
Dwight L. Herr, County Counsel (Santa Cruz), Ronald R. Ball, City Attorney (Carlsbad), Michael G. Colantuono, City Attorney (Cudahay), William B. Conners, City Attorney (Monterey), Jonathan B. Stone, City Attorney (Montebello), Daniel J. McHugh, City Attorney (Redlands), Jeffrey G. Jorgensen, City Attorney (San Luis Obispo), Brian Libow, City Attorney (San Pablo), Howard, Rice, Nemerovski, Canady & Falk and Richard C. Jacobs as Amici Curiae on behalf of Plaintiff and Appellant.
Gary D. Hori and Shawn D. Silva for Defendant and Respondent.
Daniel E. Lungren, Attorney General, Linda A. Cabatic, Assistant Attorney General, Marsha Bedwell and Shelleyanne W.L. Chang, Deputy Attorneys General, for Real Party in Interest and Respondent.
*1193 OPINION
MORRISON, J.
Chapter 478 of the Statutes of 1989 (chapter 478) amended Labor Code section 4707 to eliminate local safety members of the Public Employees' Retirement System (PERS) from the coordination provisions for death benefits payable under workers' compensation and under PERS. As a result, the survivors of a local safety member of PERS who is killed in the line of duty receives both a death benefit under workers' compensation and a special death benefit under PERS, instead of only the latter. This proceeding presents the question whether chapter 478 mandates a new program or higher level of service on local governments, requiring a subvention of funds to reimburse the local government under article XIII B section 6 of the California Constitution. We conclude that chapter 478 is not a state mandate requiring reimbursement and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
The workers' compensation system provides for death benefits payable to the deceased employee's survivors. (Lab. Code, § 4700 et seq.) There are also preretirement death benefits under PERS. (Gov. Code, § 21530 et seq.) There is a special death benefit under PERS if the death was industrial and the deceased was a patrol, state peace officer/firefighter, state safety officer, state industrial, or local safety member. (Gov. Code, § 21537.) Labor Code section 4707 provides a coordination or offset for workers' compensation death benefits when the special death benefit under PERS is payable. In such cases, no workers' compensation death benefit, other than burial expenses, is payable, except that if the PERS special death benefit is less than the workers' compensation death benefit, the difference is paid as a workers' compensation death benefit. The total death benefit is equal to the greater of the PERS special death benefit or the workers' compensation benefit, not the combination of the two death benefits.
Prior to 1989, Labor Code section 4707 provided in part: "No benefits, except reasonable expenses of burial ... shall be awarded under this division on account of the death of an employee who is a member of the Public Employees' Retirement System unless it shall be determined that a special death benefit... will not be paid by the Public Employees' Retirement System to the widow or children under 18 years of age, of the deceased, on account of said death, but if the total death allowance paid to said widow and children shall be less than the benefit otherwise payable under this division such widow and children shall be entitled, under this division, to the difference." (Stats. 1977, ch. 468, § 4, pp. 1528-1529.)
*1194 Chapter 478 amended Labor Code section 4707 to make technical changes, to provide the death benefit is payable to the surviving spouse rather than to the widow, and to add subdivision (b). Subdivision (b) of Labor Code section 4707 reads: "The limitation prescribed by subdivision (a) shall not apply to local safety members of the Public Employees' Retirement System." (Stats. 1989, ch. 478, § 1, p. 1689.)
In 1992, David Haynes, a police officer for the City of Richmond (Richmond), was killed in the line of duty. Officer Haynes was a local safety member of PERS. His wife and children received the PERS special death benefit; they also received a death benefit under workers' compensation.
Richmond filed a test claim with the Commission on State Mandates (the Commission), contending chapter 478 created a state-mandated local cost.[1] Richmond sought reimbursement of the cost of the workers' compensation death benefit, estimated to be $295,432. As part of its test claim, Richmond included legislative history of chapter 478, purporting to show a legislative intent to create a reimbursable state mandate.
The Commission denied the test claim. It found that chapter 478 dealt with workers' compensation benefits and case law held that workers' compensation laws are laws of general application and not subject to section 6 of article XIII B of the California Constitution. It noted the legislative history containing analyses that chapter 478 was a state mandate had been prepared before the issuance of City of Sacramento v. State of California (1990) 50 Cal.3d 51 [266 Cal. Rptr. 139, 785 P.2d 522].
Richmond filed a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5, seeking to compel the Commission to approve its claim. Both the Commission and the Department of Finance, as real parties in interest, responded. The court denied the petition, finding chapter 478 created an increased cost but not an increased level of service by local governments.

DISCUSSION

I
(1) Under Government Code section 17559, a proceeding to set aside the Commission's decision on a claim may be commenced on the ground that the Commission's decision is not supported by substantial evidence. Where *1195 the scope of review in the trial court is whether the administrative decision is supported by substantial evidence, our review on appeal is generally the same. (County of Los Angeles v. Commission on State Mandates (1995) 32 Cal. App.4th 805, 814 [38 Cal. Rptr.2d 304].) However, we independently review the superior court's legal conclusions as to the meaning and effect of constitutional and statutory provisions. (City of San Jose v. State of California (1996) 45 Cal. App.4th 1802, 1810 [53 Cal. Rptr.2d 521].) The question of whether chapter 478 is a state-mandated program or higher level of service under article XIII B, section 6 of the California Constitution is a question of law we review de novo. (45 Cal. App.4th at p. 1810.)
With certain exceptions not relevant here, "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service...." (Cal. Const. art. XIII B, § 6, (hereafter referred to as section 6).)
In County of Los Angeles v. State of California (1987) 43 Cal.3d 46 [233 Cal. Rptr. 38, 729 P.2d 202], the Supreme Court considered whether laws increasing the amount employers, including local governments, had to pay in certain workers' compensation benefits were a reimbursable "higher level of service" under section 6. The court looked to the intent of the voters in adopting the constitutional provision by initiative. (43 Cal.3d at p. 56.) Noting that the phrase "higher level of service" is meaningless alone, the court found it must be read in conjunction with the phrase "new program." The court concluded, "that the drafters and the electorate had in mind the commonly understood meanings of the term  programs that carry out the governmental function of providing services to the public, or laws which, to implement a state policy, impose unique requirements on local governments and do not apply generally to all residents and entities in the state." (Ibid.)
(2a) Richmond contends chapter 478 meets both tests to qualify as a program under section 6. Richmond contends increased death benefits are provided to generate a higher quality of local safety officers and thus provide the public with a higher level of service. Richmond argues that providing increased death benefits to local safety workers is analogous to providing protective clothing and equipment for fire fighters. In Carmel Valley Fire Protection Dist. v. State of California (1987) 190 Cal. App.3d 521 [234 Cal. Rptr. 795], executive orders requiring updated protective clothing and equipment for firefighters were found to be reimbursable state mandates under section 6. The executive orders applied only to fire protection, a peculiarly governmental function. The court noted that police and fire *1196 protection are two of the most essential and basic functions of local government. (190 Cal. App.3d at p. 537.) Richmond urges that since chapter 478 applies only to local safety members, it is also a state mandate directed to a peculiarly local governmental function.
In Carmel Valley Fire Protection Dist. v. State of California, supra, 190 Cal. App.3d 521, the executive order required updated equipment for the fighting of fires. The use of this equipment would result in more effective fire protection and thus would provide a higher level of service to the public. Here chapter 478 addresses death benefits, not the equipment used by local safety members. Increasing the cost of providing services cannot be equated with requiring an increased level of service under a section 6 analysis. A higher cost to the local government for compensating its employees is not the same as a higher cost of providing services to the public. (City of Anaheim v. State of California (1987) 189 Cal. App.3d 1478, 1484 [235 Cal. Rptr. 101] [temporary increase in PERS benefit to retired employees which resulted in higher contribution rate by local government was not a program or service under section 6].) In County of Los Angeles v. State of California, supra, 43 Cal.3d 46, the increase in certain workers' compensation benefits resulted in an increase in the cost to local governments of providing services. Nonetheless, the Supreme Court found no "higher level of service" under section 6. Similarly, a new requirement for mandatory unemployment insurance for local government employees, an increase in the cost of providing services, was not a "new program" or "higher level of service" in City of Sacramento v. State of California, supra, 50 Cal.3d 51, 66-70. Chapter 478 fails to meet the first test of a "program" under section 6.
Richmond urges chapter 478 meets the second test of a program under section 6 because it imposed a unique requirement on local governments that was not applicable to all residents and entities within the state. (County of Los Angeles v. State of California, supra, 43 Cal.3d 46, 56.) Richmond argues that only local governments have "local safety members" and chapter 478 required double death benefits, both PERS and workers' compensation, for this specific group of employees. By requiring double death benefits for local safety members, chapter 478 imposed a unique requirement on local government.
The Commission takes a different view of chapter 478. First, it argues that chapter 478 addresses an aspect of workers' compensation law, which, under County of Los Angeles v. State of California, supra, 43 Cal.3d 46, is a law of general application to which section 6 does not apply. The Commission argues chapter 478 imposes no unique requirement; it merely *1197 eliminates the previous exemption from providing workers' compensation death benefits to local safety members. As such, chapter 478 simply puts local government employers on the same footing as all other nonexempt employers, requiring that they provide the workers' compensation death benefit. That chapter 478 affects only local government does not compel the conclusion that it imposes a unique requirement on local government. The Commission contends Richmond's view of chapter 478 is too narrow; the law must be considered in its broader context.
While Richmond's argument has surface appeal, we conclude the Commission's view is the correct one. Section 6 was designed to prevent the state from forcing programs on local government. (3a) "[T]he intent underlying section 6 was to require reimbursement to local agencies for the costs involved in carrying out functions peculiar to government, not for expenses incurred by local agencies as an incidental impact of laws that apply generally to all state residents and entities. Laws of general application are not passed by the Legislature to `force' programs on localities." (County of Los Angeles v. State of California, supra, 43 Cal.3d at pp. 56-57.) "The goals of article XIII B, of which section 6 is a part, were to protect residents from excessive taxation and government spending. [Citation.] Section 6 had the additional purpose of precluding a shift of financial responsibility for carrying out governmental functions from the state to local agencies which had had their taxing powers restricted by the enactment of article XIII A in the preceding year and were ill equipped to take responsibility for any new programs. Neither of these goals is frustrated by requiring local agencies to provide the same protections to their employees as do private employers. Bearing the costs of salaries, unemployment insurance, and workers' compensation coverage  costs which all employers must bear  neither threatens excessive taxation or governmental spending, nor shifts from the state to a local agency the expense of providing governmental services." (Id. at p. 61.)
Although a law is addressed only to local governments and imposes new costs on them, it may still not be a reimbursable state mandate. In City of Sacramento v. State of California, supra, 50 Cal.3d 51, the Legislature enacted a statute requiring local governments to participate in the state's unemployment insurance system on behalf of their employees. Local entities made a claim for reimbursement. First, the Supreme Court found that like an increase in workers' compensation benefits, a requirement to provide unemployment insurance did not compel new or increased "service to the public" at the local level. (Id. at pp. 66-67.) The court next addressed whether the new law imposed a unique requirement on local governments.
"Here, the issue is whether costs unrelated to the provision of public services are nonetheless reimbursable costs of government, because they are *1198 imposed on local governments `unique[ly], and not merely as an incident of compliance with general laws. State and local governments, and nonprofit corporations, had previously enjoyed a special exemption from requirements imposed on most other employers in the state and nation. Chapter 2/78 merely eliminated the exemption and made these previously exempted entities subject to the general rule. By doing so, it may have imposed a requirement `new' to local agencies, but that requirement was not `unique.' [¶] The distinction proposed by plaintiffs would have an anomalous result. The state could avoid subvention under County of Los Angeles standards by imposing new obligations on the public and private sectors at the same time. However, if it chose to proceed by stages, extending such obligations first to private entities, and only later to local governments, it would have to pay. This was not the intent of our recent decision." (City of Sacramento v. State of California, supra, 50 Cal.3d 51, 68-69, italics in original.)
Richmond argues that Labor Code section 4707, prior to chapter 478, was not an exemption from workers' compensation, relying on Jones v. Kaiser Industries Corp. (1987) 43 Cal.3d 552 [237 Cal. Rptr. 568, 737 P.2d 771]. In Jones, the plaintiff, a city police officer, was killed in a traffic accident while on duty. His survivors brought suit against the city, contending it has created and maintained a dangerous condition at the intersection where the accident occurred. Plaintiffs argued their suit was not barred by the exclusivity provisions of workers' compensation because they did not receive a workers' compensation death benefit under Labor Code section 4707. The court rejected this argument. First, plaintiffs did receive a benefit under workers' compensation in the form of burial expenses. Further, Labor Code section 4707 was designed not to exclude plaintiffs from receiving workers' compensation benefits, but to assure they received the maximum benefit under either PERS or workers' compensation. (43 Cal.3d at p. 558.)
Under Jones v. Kaiser Industries Corp., supra, 43 Cal.3d 552, one receiving a special death benefit under PERS rather than the workers' compensation death benefit is not considered exempt from workers' compensation for purposes of its exclusivity provisions, precluding a suit against the employer for negligence. This conclusion does not affect the analysis that chapter 478, by removing the offset provisions for employers of local safety members, merely makes local governments "indistinguishable in this respect from private employers." (County of Los Angeles v. State of California, supra, 43 Cal.3d at p. 58.)
(2b) Richmond's error is in viewing chapter 478 from the perspective of what the final result is, rather than from the perspective of what the law mandates. (3b) "We recognize that, as is made indisputably clear from *1199 the language of the constitutional provision, local entities are not entitled to reimbursement for all increased costs mandated by state law, but only those costs resulting from a new program or an increased level of service imposed upon them by the state." (Lucia Mar Unified School Dist. v. Honig (1988) 44 Cal.3d 830, 835 [244 Cal. Rptr. 677, 750 P.2d 318].) (2c) While the result of chapter 478 is that local safety members of PERS now are eligible for two death benefits and local governments will have to fund the workers' compensation benefit, chapter 478 does not mandate double death benefits. Instead, it merely eliminates the offset provisions of Labor Code section 4707. In this regard, the law makes the workers' compensation death benefit requirements as applicable to local governments as they are to private employers. It imposes no "unique requirement" on local governments.
Further, the view that the Legislature was proceeding by stages in enacting chapter 478 finds support in the history of the nearly identical predecessor to chapter 478, Assembly Bill No. 1097 (1987-1988 Reg. Sess.). Assembly Bill No. 1097 was passed in 1988, but was vetoed by the Governor. While the final version of Assembly Bill No. 1097 was virtually identical to chapter 478 in adding subdivision (b) to Labor Code section 4707 (Assem. Bill No. 1097 (1987-1988 Reg. Sess.) as amended Mar. 22, 1988), the bill was very different when it began. The initial version of Assembly Bill No. 1097 repealed Labor Code section 4707 in its entirety. (Assem. Bill No. 1097 (1987-1988 Reg. Sess.) introduced Mar. 2, 1987.) The next version made Labor Code section 4707 applicable only to state members of PERS. (Assem. Bill No. 1097 (1987-1988 Reg. Sess.) as amended June 15, 1987.) The final version left Labor Code section 4707 applicable to all but local safety members of PERS.

II
(4) As part of its test claim, Richmond included portions of the legislative history of chapter 478 to show the Legislature intended to create a state mandate. This history includes numerous bill analyses by legislative committees that state the bill creates a state-mandated local program.
Government Code section 17575 requires the Legislative Counsel to determine if a bill mandates a new program or higher level of service under section 6. If the Legislative Counsel determines the bill will mandate a new program or higher level of service under section 6, the bill must contain a section specifying that reimbursement shall be made from the state mandate fund, that there is no mandate, or that the mandate is being disclaimed. (Gov. Code, § 17579.) The Legislative Counsel found that chapter 478 imposed *1200 a state-mandated local program. The enacted statute provided: "Notwithstanding Section 17610 of the Government Code, if the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code. If the statewide cost of the claim for reimbursement does not exceed one million dollars ($1,000,000), reimbursement shall be made from the State Mandates Claims Fund." (Stats. 1989, ch. 478, § 2, p. 1689.)
One analysis concluded this language was technically deficient because it does not contain a specific acknowledgment that the bill is a state mandate. Reimbursement could not be made until the Commission held a hearing on a test claim. The analysis concluded it "should not be a serious problem because the information provided in this analysis could also be provided to the Commission on State Mandates if any local agency submits a claim for reimbursement to that Commission."
Another analysis suggested including an appropriation to avoid the necessity of the Commission having to determine that the bill was a mandate.
Richmond argues this legislative history shows the Legislature intended chapter 478 to be a state mandate and that it should be considered in making that determination. Amici curiae submitted a brief urging that case law holding that legislative history is irrelevant to the issue of whether there is a state-mandated new program or higher level of service under section 6 is wrongly decided.[2] Amici curiae argue that the intent of the Legislature should control. They further note that the legislative history of chapter 478 shows that the initial opposition of the League of California Cities was dropped after the bill was amended to ensure reimbursement, and that the Governor signed the bill after he had vetoed a similar one that was not considered a state mandate. Amici curiae argue that to ignore the widespread understanding that the bill created a state mandate would undermine the legislative process.
In County of Los Angeles v. Commission on State Mandates, supra, 32 Cal. App.4th 805, plaintiff sought reimbursement for costs incurred under Penal Code section 987.9 for providing certain services to indigent criminal defendants. Plaintiff argued the Legislature's initial appropriation of funds to cover the costs incurred under Penal Code section 987.9 was a final and *1201 unchallengeable determination that section 987.9 constituted a state mandate. The court rejected this argument. "The findings of the Legislature as to whether section 987.9 constitutes a state mandate are irrelevant." (32 Cal. App.4th at p. 818.)
The court, relying on Kinlaw v. State of California (1991) 54 Cal.3d 326 [285 Cal. Rptr. 66, 814 P.2d 1308], found the Legislature had created a comprehensive and exclusive procedure for implementing and enforcing section 6. (County of Los Angeles v. Commission on State Mandates, supra, 32 Cal. App.4th at pp. 818-819.) This procedure is set forth in Government Code section 17500 et seq. "[T]he statutory scheme contemplates that the Commission, as a quasi-judicial body, has the sole and exclusive authority to adjudicate whether a state mandate exists. Thus, any legislative findings are irrelevant to the issue of whether a state mandate exists, and the Commission properly determined that no state mandate existed." (32 Cal. App.4th at p. 819.)
In City of San Jose v. State of California, supra, 45 Cal. App.4th 1802, 1817-1818, the court relied upon County of Los Angeles v. Commission on State Mandates, supra, 32 Cal. App.4th 805, in rejecting the argument that the determination by Legislative Counsel that a bill imposed a state mandate was entitled to deference.
Amici curiae contend these cases are wrong because they ignore the cardinal rules of statutory construction that courts must construe statutes to conform to the purpose and intent of lawmakers and that the intent of the Legislature should be ascertained to effectuate the purpose of the law.
Amici curiae are correct that "`the objective of statutory interpretation is to ascertain and effectuate legislative intent.' [Citation.]" (Trope v. Katz (1995) 11 Cal.4th 274, 280 [45 Cal. Rptr.2d 241, 902 P.2d 259].) Where such intent is not clear from the language of the statute, we may resort to extrinsic aids, including legislative history. (People v. Coronado (1995) 12 Cal.4th 145, 151 [48 Cal. Rptr.2d 77, 906 P.2d 1232].) Here, however, the issue is not the interpretation of Labor Code section 4707. The parties agree it requires that the survivors of local safety members killed due to an industrial injury receive both the special death benefit under PERS and the workers' compensation death benefit. Rather, the issue is whether section 6 requires reimbursement for the costs incurred by local governments under chapter 478. The Legislature has entrusted that determination to the Commission, subject to judicial review. (Gov. Code, §§ 17500, 17559.) It has provided that the initial determination by Legislative Counsel is not binding on the Commission. (Id., § 17575.) Indeed, the language of chapter 478 recognizes that the determination of whether the bill is a state mandate lies with *1202 the Commission. It reads, "if the Commission on State Mandates determines that this act contains costs mandated by the state, ..." (Stats. 1989, ch. 478, § 2, p. 1689, italics added.) While the legislative history of chapter 478 may evince the understanding or belief of the Legislature that chapter 478 created a state mandate, such understanding or belief is irrelevant to the issue of whether a state mandate exists. (County of Los Angeles v. Commission on State Mandates, supra, 32 Cal. App.4th 805, 819.)

DISPOSITION
The judgment is affirmed.
Puglia, P.J., and Nicholson, J., concurred.
Appellant's petition for review by the Supreme Court was denied August 19, 1998.
NOTES
[1] "`Test claim' means the first claim filed with the commission alleging that a particular statute or executive order imposes costs mandated by the state." (Gov. Code, § 17521.)
[2] The California State Association of Counties, and the Cities of Carlsbad, Cudahy, Montebello, Monterey, Redlands, San Luis Obispo and San Pablo filed an amici curiae brief in support of Richmond.