122 Cal.Rptr.2d 614 (2002)
99 Cal.App.4th 1270
SAN DIEGO UNIFIED SCHOOL DISTRICT, Plaintiff and Respondent,
v.
COMMISSION ON STATE MANDATES, Defendant and Appellant;
California Department of Finance, Real Party in Interest and Appellant.
No. D038027.
Court of Appeal, Fourth District, Division One.
July 3, 2002.
Review Granted October 2, 2002.
*615 Paul M. Starkey, Camille Shelton, Sacramento, and Katherine Tokarski, for Defendant and Appellant.
Bill Lockyer, Attorney General, Andrea Lynn Hoch, Assistant Attorney General, Louis R. Mauro, Supervising Deputy Attorney General, and Susan R. Oie, Deputy Attorney General, for Real Party in Interest and Appellant.
Jo Anne Sawyerkoll and Jose A. Gonzales, for Plaintiff and Respondent.
NARES, Acting P.J.
Section 6 of article XIII B of the California Constitution (hereafter section 6) provides, with certain exceptions, that "[w]henever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service...." (Italics added.) We are called upon here to determine the extent to which California public school districts are entitled to reimbursement under section 6 for costs incurred in carrying out (1) mandatory expulsions of students under *616 Education Code[1] section 48915, subdivision (b) (hereafter section 48915(b)), for possession of a firearm at school or at a school activity off school grounds; and (2) discretionary expulsions of students under section 48915, subdivision (c) (hereafter section 48915(c)), for other specified types of misconduct at those locations.
Defendant Commission on State Mandates (the Commission) and real party in interest California Department of Finance (the Department) (together appellants) appeal from a judgment granting a petition for a writ of mandate in favor of plaintiff and respondent San Diego Unified School District (the District). The District filed with the Commission a test claim seeking reimbursement from the State of California (the State) under section 6 for costs incurred for the mandatory expulsion of students under section 48915(b) and for the discretionary expulsion of students under section 48915(c). In its decision denying the District's test claim, the Commission found that (1) the costs of discretionary expulsions under amended section 48915(c) are not reimbursable state-mandated costs under section 6; and (2) the costs of mandatory expulsions under amended section 48915(b) are not reimbursable state-mandated costs under section 6 to the extent the expulsion hearing procedures are required by the federal due process clause set forth in the Fourteenth Amendment to the United States Constitution.
The District filed a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5 seeking to compel the Commission to approve its test claim. The court granted the petition and issued a peremptory writ of mandate ordering the Commission to set aside its decision and enter a new decision finding that (1) all costs incurred by the District in carrying out mandatory expulsions under section 48915(b) are reimbursable, and (2) the costs incurred by the District in carrying out discretionary expulsions under section 48915(c) are reimbursable to the extent those costs result from state-mandated hearing procedures that are not required by the federal due process clause. We affirm.

BACKGROUND

A. Statutory Framework

Adopted on November 6, 1979, as part of an initiative measure that imposed spending limits on state and local government, section 6 imposes on the State an obligation to reimburse local agencies for the cost of most programs and services they are required to provide pursuant to a state mandate if those local agencies were not under a preexisting duty to fund the activity. (Kinlaw v. State of California (1991) 54 Cal.3d 326, 328, 285 Cal.Rptr. 66, 814 P.2d 1308 (Kinlaw).) Section 6 provides, with exceptions not applicable here:
"Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service." (Italics added.)
In 1984, the Legislature enacted legislation (Gov.Code, § 17500 et seq.) that set forth comprehensive administrative procedures for resolution of claims arising out of section 6. (Kinlaw, supra, 54 Cal.3d at p. 331, 285 Cal.Rptr. 66, 814 P.2d 1308.)
In part 7 of division 4 of title 2 of the Government Code, which commences with Government Code section 17500, the Legislature created the Commission (id., *617 § 17525) to adjudicate disputes over the existence of a state-mandated program (id., §§ 17551, 17557) and to adopt procedures for submission and adjudication of reimbursement claims (id., § 17553). (See generally Kinlaw, supra, 54 Cal.3d at p. 331, 285 Cal.Rptr. 66, 814 P.2d 1308.) The seven-member Commission includes the Controller, the Treasurer, the Director of Finance, the Director of the Office of Planning and Research, a public member experienced in public finance, and two additional members appointed by the Governor. (Gov.Code, § 17525.)
The legislation established a "test claim" procedure (discussed, post) to expeditiously resolve disputes affecting multiple agencies (Gov.Code, §§ 17553, 17554), established the method of payment of claims (id., §§ 17558, 17561), and created reporting procedures to enable the Legislature to budget adequate funds to meet the expense of state mandates (id., §§ 17562, 17600,17612, subd. (a)).
Under procedures the Commission was authorized to establish (Gov.Code, § 17553), local agencies[2] and school districts[3] may file claims with the Commission for reimbursement of state-mandated costs. (Id., §§ 17551, 17560.) This statutory procedure is the exclusive means by which a local agency or school district may claim reimbursement for state-mandated costs. (Id.. §§ 17550,17552.)
A "test claim" is the first reimbursement claim filed by a local agency or school district with the Commission alleging that a particular statute or executive order imposes costs mandated by the State. (Gov. Code, § 17521.) The term "costs mandated by the state" is defined in Government Code section 17514:
"`Costs mandated by the state' means any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute enacted on or after January 1, 1975, or any executive order implementing any statute enacted on or after January 1, 1975, which mandates a new program or higher level of service of an existing program within the meaning of [section 6J." (Italics added.)
The State is required to reimburse a school district for "all `costs mandated by the state,' as defined in [Government Code] Section 17514." (Gov.Code, § 17561, subd. (a), italics added.)
Government Code section 17556[4] sets forth specific exceptions to the section 6 *618 reimbursement requirement. Subdivision (c) of that section provides in part: "The commission shall not find costs mandated by the state, as defined in Section 17514, in any claim submitted by
a ... school district, if, after a hearing, the commission finds that: [¶] ... [¶] (c) The statute or executive order implemented a federal law or regulation and resulted in costs mandated by the federal government, unless the statute or executive order mandates costs which exceed the mandate in that federal law or regulation." (Italics added.)
The Commission must promptly hold a public hearing on a test claim or any other reimbursement claim under section 6. At the hearing, evidence may be presented by the claimant, the Department, any other affected department or agency, and any other interested organization or individual. (Gov.Code, §§ 17553, subd. (a), 17555, subd. (a); Kinlaw, supra, 54 Cal.3d at p. 332, 285 Cal.Rptr. 66, 814 P.2d 1308.) After the hearing, the Commission must first determine whether there are costs mandated by the State. (Gov.Code, § 17555, subd. (a); Kinlaw, supra, 54 Cal.3d at p. 332, 285 Cal.Rptr. 66, 814 P.2d 1308.) If the Commission determines there are such costs, it must determine the amount to be subvened to local agencies and school districts for reimbursement as required by section 6. (Gov.Code, §§ 17551, subd. (a), 17557, subd. (a); Kinlaw, supra, 54 Cal.3d at p. 332, 285 Cal.Rptr. 66, 814 P.2d 1308.)

1. Student Expulsion Decisions

Three test claim statutes pertaining to decisions to expel students are involved in the instant appeal: sections 48915(b), 48915(c), and 48918.

i. Mandatory expulsions: section 48915(b))
The first test claim statute, section 48915(b), governs mandatory expulsions. Two versions of that statute are involved here. The first, which was effective from October 11, 1993 through December 31, 1993, required (1) a school principal or superintendent to immediately suspend, and recommend to the school district governing board the expulsion of any pupil found to be in possession of a firearm, a knife of no reasonable use to the pupil, or an explosive at school or at a school activity off school grounds; and further required (2) the governing board, after a due process hearing, to either expel the pupil or refer that pupil to an alternative education program in the event the alleged misconduct was confirmed.[5] The second *619 version of section 48915(b) involved here, which took effect on January 1, 1994, following an amendment, limited the grounds for mandatory expulsions to possession of a firearm at school or at a school activity off school grounds.[6]

ii. Discretionary expulsions: section 48915(c)

The second test claim statute, section 48915(c), pertains to discretionary expulsions. As amended, section 48915(c)[7] provides that upon the recommendation of the principal, superintendent of schools, hearing officer or administrative panel, the school district governing board "may" order a pupil expelled upon finding, after a due process hearing, that the pupil, while at school or at a school activity off school grounds, violated any of the provisions of subdivisions (f) through (l) of section 48900,[8] or *620 sections 48900.2[9] or 48900.3,[10] which pertain to (among other things) damaging or stealing school or private property, using or selling illicit drugs, receiving stolen property, possessing tobacco or drug paraphernalia, or engaging in disruptive behavior, sexual harassment, or hate violence.

iii. Procedures for expulsion

The third test claim statute at issue here, section 48918, specifies the policies and procedures a school district governing board must follow when conducting a due process hearing in student expulsion cases. Section 48918 requires that school district governing boards establish rules and regulations for expulsion of pupils. The rules and procedures must provide (among other things) for an evidentiary hearing on the expulsion, notice of the hearing, preparation of findings of fact if expulsion is recommended by the hearing panel, and preparation of a record of the hearing.

B. Procedural Background

1. Amended test claim and hearing

In March 1994, the District filed test claim No. CSM-455 with the Commission. About a month later, the District filed an amendment to update the test claim to reflect new legislation.
The District's amended test claim, which involved about 20 statutes and 10 Education Code sections covering legislation from 1975 to 1994 relating to expulsion of public school students, including the three test claim statutes at issue here (§§ 48915(b), 48915(c), & 48918), alleged that the subject statutes had imposed on the District reimbursable "costs mandated by the state" within the meaning of section 6 and Government Code section 17514 (discussed, ante). In 1996 and 1997, the Commission held public hearings on the amended test claim.

2. The Commission's decision

In August 1998, the Commission issued its corrected statement of decision (hereafter the Commission's decision). The Commission's decision contained several findings that are pertinent to the instant appeal.

i. Mandatory expulsions: sections 48915(b) and 48918

With respect to the District's test claim involving the mandatory expulsion provisions of section 48915(b), the Commission found the version of that statute as amended *621 by chapter 1256 of Statutes 1993 (effective Jan. 1, 1994) imposed a new program or higher level of service in an existing program within the meaning of section 6 and Government Code section 17514 by requiring school district governing boards to expel pupils, or alternatively refer them to an alternative education program, for the offense of possessing a firearm at school or at a school activity off school grounds.[11]
With respect to the District's claim for reimbursement, the Commission examined the mandated expulsion procedures set forth in section 48918 (discussed, ante) and found that some of the provisions of that section had been enacted to comply with federal due process requirements under the Fourteenth Amendment, and thus did not impose reimbursable state-mandated costs within the meaning of section 6 and Government Code section 17514 (discussed, ante). The Commission also found, however, that other provisions of section 48918 did impose a new program or higher level of service in an existing program, and thus the costs incurred in providing the state-mandated expulsion procedures that exceeded federal due process requirements were reimbursable. For the most part, these reimbursable costs for mandatory expulsions involve various notice procedures that exceed federal due process requirements.[12]

ii. Discretionary expulsions: section 48915(c)

With respect to the District's test claim involving the discretionary expulsion provisions of section 48915(c), the Commission found that because expulsions under section 48915(c) were discretionary, that section did not impose a new program or higher level of service, and thus the District was not entitled to reimbursement for any of the costs incurred in those expulsions.

3. The District's Petition for Writ of Mandate

In October 1999, the District challenged the Commission's decision by filing its petition *622 for writ of mandate in the superior court under Code of Civil Procedure section 1094.5, alleging the Commission had committed a prejudicial abuse of discretion by failing to proceed in a manner required by law. The District claimed that all costs incurred in carrying out mandatory expulsions under section 48915(b) are reimbursable under section 6 and Government Code section 17514. The District argued that because there is no federal requirement to expel a student, all of the expulsion process provisions set forth in section 48918 are mandated by the State, and thus all of the costs of carrying out such mandatory expulsions are reimbursable regardless of whether the procedural requirements stem from federal law.
The District also claimed in the petition that after finding section 48915(c) granted the District discretion to expel students for offenses listed therein, the Commission was required under section 6 and Government Code section 17514 to find that the costs incurred in carrying out such discretionary expulsions are reimbursable to the extent the mandated procedures exceed the requirements of federal due process. The District acknowledged that costs incurred in complying with federal due process procedures are not reimbursable. The District asserted it is irrelevant whether the original decision to expel a pupil under section 48915 is mandatory or discretionary because once it decides to expel a student it must follow state-mandated expulsion procedures and thereby incur costs it otherwise would not have incurred.
The Department opposed the petition, arguing that the State "has no choice in deciding whether to comply the United States Constitution," and costs imposed on local government agencies by the federal government are not costs mandated by the State by definition and thus do not require reimbursement by the State. It also argued that no reimbursement was required for discretionary expulsions because the discretion to expel students has always rested with the school districts, which have always borne the financial responsibility for carrying out expulsion procedures. The Commission also filed similar opposition to the petition.

4. Trial Court's Ruling and Amended Judgment

After issuing a tentative ruling denying the petition, the court reversed the tentative ruling and granted the petition after hearing oral argument. The amended judgment orders the issuance of a peremptory writ of mandate commanding the Commission to:
"a. Set aside its decision dated August 10, 1998, Case No. CSM 4455, to the extent the Commission found that reimbursable costs in an expulsion proceeding under [section] 48915(b) are limited to the costs of those proceedings enumerated in the decision, and not required by federal law, and to issue a decision in said case finding that all costs of expulsion proceedings brought under [section] 48915(b) are reimbursable costs; and
"b. Set aside its decision dated August 10, 1998, Case No. CSM 4455 to the extent the Commission found that expulsions authorized by [section] 48915 (c) result in no reimbursable costs and to issue a decision finding that state mandated expulsion procedure costs incurred in cases when expulsion is discretionary are reimbursable to the extent they exceed costs mandated by federal law or regulation." (Italics added.)
Appellants' timely appeal followed.

*623 STANDARD OF REVIEW
The Court of Appeal in City of Richmond v. Commission on State Mandates (1998) 64 Cal.App.4th 1190, 1194-1195, 75 Cal.Rptr.2d 754 (City of Richmond) explained the applicable standard of appellate review:
"Under Government Code section 17559, a proceeding to set aside the Commission's decision on a claim may be commenced on the ground that the Commission's decision is not supported by substantial evidence. Where the scope of review in the trial court is whether the administrative decision is supported by substantial evidence, our review on appeal is generally the same. [Citation.] However, we independently review the superior court's legal conclusions as to the meaning and effect of constitutional and statutory provisions. [Citation.]" (Italics added.)
Furthermore, a finding by a state agency is accorded great weight unless shown to be clearly erroneous. (City of Merced v. State of California (1984) 153 Cal.App.3d 777, 782, 200 Cal.Rptr. 642 (City of Merced).)
Because the facts in the instant case are essentially undisputed, the question of whether the statutes pertaining to mandatory and discretionary student expulsions impose on the District a state-mandated program or higher level of service within the meaning of section 6 is a question of law we review de novo. (See City of Richmond supra, 64 Cal.App.4th at p. 1195, 75 Cal.Rptr.2d 754.)

DISCUSSION

I. MANDATORY EXPULSIONS

With respect to the District's test claim involving mandatory expulsions under section 48915(b), the Commission found that this statute imposed a new program or higher level of service in an existing program within the meaning of section 6 by requiring school district governing boards to expel pupils, or alternatively refer them to an alternative education program, for the offense of possessing a firearm at school or at a school activity off school grounds. The Commission also found, however, that the District was only entitled to reimbursement for the costs it incurred in providing the expulsion procedures mandated by section 48918 that exceeded federal due process requirements. In granting the District's petition for writ of mandate, the court ordered the Commission to set aside its decision and enter a new decision finding that "all costs of expulsion proceedings" incurred by the District in carrying out mandatory expulsions under section 48915(b) are reimbursable. We conclude the court did not err.
As already discussed,[13] section 6 provides (with exceptions not applicable here) that "[w]henever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service." (Italics added.) Government Code section 17561, subdivision (a) provides that the State "shall" reimburse a school district "for all `costs mandated by the state,' as defined in [Government Code section] 17514." (Italics added.) Government Code section 17514, in turn, provides in part that the term "costs mandated by the state" means "any increased costs which a ... school district is required to incur ... as a result of any statute ... which mandates a new program or higher level of service of an existing *624 program within the meaning of [section 6]."[14] (Italics added.)
Relying on subdivision (c) of Government Code section 17556, appellants contend the costs incurred by the District in carrying out mandatory expulsions under section 48915(b) and complying with the mandatory expulsion procedures set forth in section 48918 are reimbursable only to the extent the costs are incurred in providing those section 48918 procedures that exceed federal due process requirements. We reject this contention and hold that the District is entitled to reimbursement of all costs incurred in carrying out mandatory expulsions under section 48915(b).
Appellants' reliance on subdivision (c) of Government Code section 17556 is misplaced. That section sets forth various exceptions to the section 6 reimbursement requirement. Subdivision (c) of that section directs that the Commission "shall not" find in a school district's claim any "costs mandated by the state" as defined by section 17514 if "[t]he statute ... implemented a federal law or regulation and resulted in costs mandated by the federal government, unless the statute ... mandates costs which exceed the mandate in that federal law or regulation."[15] (Italics added.)
We are called upon to determine in the context of the instant case whether the term "the statute" as used in subdivision (c) of Government Code section 17556 refers to section 48915(b), which is the subject mandatory expulsion test claim statute at issue here, or to section 48918, which (as already noted) specifies the procedures that a school district must follow in carrying out a mandatory expulsion under section 48915(b).
The applicable canons of statutory construction that guide our analysis in this matter are well established. "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]" (Select Base Materials v. Board of Equal. (1959) 51 Cal.2d 640, 645, 335 P.2d 672.) In determining that intent, we first examine the words of the statute itself. (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 698, 170 Cal.Rptr. 817, 621 P.2d 856.) Under the so-called "plain meaning" rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299.) "If the language [of the statute] is clear and unambiguous there is no need for construction." (Ibid.) "`We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' *625 [Citation.]" (People v. Coronado (1995) 12 Cal.4th 145, 151, 48 Cal.Rptr.2d 77, 906 P.2d 1232.)
We conclude that the term "the statute" as used in subdivision (c) of Government Code section 17556 (discussed, ante ) plainly refers to the test claim statute under which a given school district may seek reimbursement under section 6. Government Code section 17556 is part of the implementing legislation enacted in 1984 (Gov.Code, § 17500 et seq.) that sets forth comprehensive administrative procedures for resolution of test claims arising out of section 6. (Kinlaw, supra, 54 Cal.3d at p. 331, 285 Cal.Rptr. 66, 814 P.2d 1308.) In the instant case, section 48915(b), not section 48918, is the mandatory expulsion test claim statute in question.
Such an interpretation comports with the general purpose of the statutory scheme governing reimbursement of state-mandated costs incurred by local governments. In County of Fresno v. State of California (1991) 53 Cal.3d 482, 487, 280 Cal.Rptr. 92, 808 P.2d 235 (County of Fresno), the California Supreme Court explained that the purpose of section 6 is "to protect the tax revenues of local governments from state mandates that would require expenditure of such revenues." (Italics added.) Here, the parties agree that mandatory pupil expulsion under section 48915(b) is a state, not a federal, mandate. Section 48915(b) does not "implement[] a federal law or regulation" within the meaning of Government Code section 17556, subdivision (c), because no federal law or regulation mandates pupil expulsion for possession of a firearm.
Appellants' reliance on the decision in County of Los Angeles v. Commission on State Mandates (1995) 32 Cal.App.4th 805, 38 Cal.Rptr.2d 304 (County of Los Angeles) is misplaced. There, the Court of Appeal rejected the claim that Penal Code section 987.9, which required counties to provide indigent criminal defendants with certain defense funds, imposed an unfunded state mandate. (County of Los Angeles, supra, at p. 814, 38 Cal.Rptr.2d 304.) Los Angeles County filed the test claim after the State, which had enacted appropriations between 1977 and 1990 to reimburse counties for their costs under that statute, made no appropriation for the 1990-1991 fiscal year. (Id. at pp. 812-813, 38 Cal.Rptr.2d 304.) In rejecting the claim, the Court of Appeal held there was no state mandate because (among other things) Penal Code section 987.9 merely implemented the mandates of federal law. (County of Los Angeles, supra, at p. 815, 38 Cal.Rptr.2d 304.) The court explained that "even in the absence of [Penal Code] section 987.9, appellant and other counties would be responsible for providing ancillary services under the constitutional guarantees of due process under the Fourteenth Amendment and the Sixth Amendment right to counsel." (County of Los Angeles, supra, at pp. 814-816, 38 Cal. Rptr.2d 304.)
In the County of Los Angeles case, the requirements of the test claim statute, Penal Code section 987.9, did not constitute a state mandate for purposes of section 6 because those requirements implemented the mandates of federal law. Here, however, neither of the test claim statutes at issue here (§§ 48915(b) & 48918) implements a federal mandate requiring expulsion of students found to be in possession of a firearm while at school or at a school activity off school grounds. Thus, the County of Los Angeles case is inapposite.
We conclude that the exception to the section 6 reimbursement requirement set forth in subdivision (c) of Government Code section 17556 (discussed, ante) does not apply in the instant case. The court properly found that the due process procedures *626 required by federal law, "would not automatically occur in the absence of the mandatory expulsion requirements of [section 48915(b)]." We further conclude that because the mandatory expulsion of a student for possession of a firearm under section 48915(b) is a state mandate that does not implement a federal mandate, and no exception to the section 6 reimbursement requirement applies, the District is entitled to reimbursement of all costs incurred in carrying out that state mandate, including the cost of complying with all of the mandatory procedures set forth in section 48918. The court properly rejected the Commission's finding that the District was only entitled to reimbursement for the costs it incurred in providing the section 48918 expulsion procedures that exceeded federal due process requirements.

II. DISCRETIONARY EXPULSIONS

In granting the District's petition for writ of mandate, the court also ordered the Commission to enter a new decision finding that the costs incurred by the District in carrying out discretionary expulsions under section 48915(c) are reimbursable to the extent those costs result from state-mandated hearing procedures that exceed federal due process requirements. We conclude the court did not err.
As already discussed in the background section of this opinion, section 48915(c) is a test claim statute under which a school district governing board "may" expel a pupil upon finding, after a due process hearing, that the pupil, while at school or at a school activity off school grounds, committed a specified offense, such as damaging or stealing school or private property, using or selling illicit drugs, receiving stolen property, possessing tobacco or drug paraphernalia, or engaging in disruptive behavior, sexual harassment, or hate violence.
Citing City of Merced, supra, 153 Cal. App.3d 777, 200 Cal.Rptr. 642, appellants contend that once a school district makes a discretionary decision under section 48915(c) to expel a student, the costs of complying with the "downstream" procedures mandated by section 48918 are not reimbursable under section 6. We reject this contention.
It is undisputed that once a school district exercises its discretion to expel a student under section 48915(c), it must comply with the expulsion procedures mandated by section 48918, the third test claim statute at issue in the instant appeal. The statutory framework does not permit school districts to conduct discretionary expulsions in alternative methods in which one method results in state-mandated costs and another method does not. As already discussed, the purpose of section 6 is to protect the tax revenues of school districts and other local government bodies from state mandates that would require expenditure of such revenues. (County of Fresno, supra, 53 Cal.3d at p. 487, 280 Cal.Rptr. 92, 808 P.2d 235.) Appellants do not rely upon, nor can they rely upon, any of the exceptions to the section 6 reimbursement requirement set forth in Government Code section 17556.[16] We hold that section 48918 imposes a state-mandated "new program or higher level of service" within the meaning of section 6 and Government Code section 17514 to the extent it mandates expulsion procedures that exceed federal due process requirements in connection with discretionary pupil expulsions under section 48915(c).
Appellants' reliance on the City of Merced decision is misplaced The issue presented in that case was whether Code *627 of Civil Procedure section 1263.510,[17] which requires compensation for loss of goodwill when business property is taken by eminent domain, imposes a state-mandated cost. (City of Merced, supra, 153 Cal.App.3d at p. 780, 200 Cal.Rptr. 642.) Citing Code of Civil Procedure section 1230.030[18] for the proposition that the city had discretion as to whether to acquire the subject property by purchase or eminent domain, the Court of Appeal held that the city's payment of goodwill under the statute is was not a state-mandated cost. (City of Merced, supra, at p. 783, 200 Cal.Rptr. 642.) The court explained that "whether a city or county decides to exercise eminent domain is, essentially, an option of the city or county, rather than a mandate of the state. The fundamental concept is that the city or county is not required to exercise eminent domain. If, however, the power of eminent domain is exercised, then the city will be required to pay for loss of goodwill." (Ibid.)
The City of Merced case is factually and legally distinguishable. City of Merced involved statutorily-required compensation for loss of goodwill in an eminent domain proceeding.[19] (City of Merced supra, 153 Cal.App.3d at p. 779, 200 Cal.Rptr. 642.) Here, we are concerned with statutorily-mandated hearing procedures that exceed federal due process requirements and increase the operating expenses of school districts seeking to ensure a safe educational environment for the pupils under their care and supervision by carrying out expulsions under section 48915(c). The obligation of school districts to provide a safe educational environment is embodied in article I, section 28, subdivision (c) of the California Constitution, which provides:
"All students and staff of public primary, elementary, junior high and senior high schools have the inalienable right to attend campuses which are safe, secure and peaceful."
Payment of compensation for loss of goodwill as an element of damages in an eminent domain proceeding is simply not analogous to a school district's incurring of additional costs to comply with due process expulsion hearing requirements that are mandated by the State under section 48918, but are not mandated by federal due process requirements. In light of a *628 school district's constitutional obligation to provide a safe educational environment (discussed, ante), the incurring of such costs cannot properly be viewed as a non-reimbursable "downstream" consequence of a decision to expel a student under section 48915(c) for damaging or stealing school or private property, using or selling illicit drugs, receiving stolen property, engaging in sexual harassment or hate violence, or committing other specified acts of misconduct (discussed, ante) that warrant such expulsion.
Once the District makes the discretionary decision to expel a student under section 48915(c), it does not have discretion to carry out that expulsion in a manner that avoids the mandatory state procedures set forth in section 48918. It is compelled under California statutory mandate to follow expulsion hearing procedures that exceed federal due process requirements. The state-mandated procedures that exceed federal due process requirements compel school districts to incur additional costs. The purpose of section 6 is to indemnify school districts to the extent they are required by state mandate to make such payments out of their limited budgets.
We conclude the procedures mandated by section 48918 that exceed federal due process requirements impose a new program or higher level of service within the meaning of section 6.[20] The costs the District incurs in complying with the procedures mandated by section 48918 are thus reimbursable state-mandated costs for purposes of section 6 to the extent the procedures to which they relate exceed federal due process requirements. (See also Gov.Code, § 17556, subd. (c), discussed, ante.)
In its opening brief, the Commission relies on Lucia Mar Unified School Dist. v. Honig (1988) 44 Cal.3d 830, 244 Cal. Rptr. 677, 750 P.2d 318 (Lucia Mar) for the proposition that "[t]he California Supreme Court has recognized that once a local agency performs a permissive act, or has alternatives other than performing the action under the test claim statute, the `downstream' or consequential activities, although statutorily required, are not mandated by the state." The Lucia Mar decision, however, does not support this proposition.
Lucia Mar involved section 59300, which was enacted in 1981 and required local school districts to contribute part of the cost of educating district students at state schools for the severely handicapped. (Lucia Mar, supra, 44 Cal.3d at p. 832, 244 Cal.Rptr. 677, 750 P.2d 318.) Before 1979, various statutes had required school districts to contribute to the education of students in their districts who attended the state schools. (Id. at pp. 832-833, 244 Cal.Rptr. 677, 750 P.2d 318.) Those statutes were repealed following the passage of Proposition 13 in 1978, and in 1979 the State assumed full responsibility for funding the schools. (Lucia Mar, supra, 44 Cal.3d at pp. 832-833, 835, 244 Cal.Rptr. 677, 750 P.2d 318.) When article XIII B was added to the Constitution, effective July 1, 1980, the State had full financial responsibility for operating the state schools, and the State still had this responsibility when section 59300 was enacted in 1981. (Lucia Mar, supra, 44 Cal.3d at p. 833, 244 Cal.Rptr. 677, 750 P.2d 318.)
In 1984 the Lucia Mar Unified School District and other school districts filed a test claim asserting that section 59300 required *629 them to make payments for a "new program or increased level of service," thus entitling them to reimbursement under section 6. (Lucia Mar, supra, 44 Cal.3d at p. 834, 244 Cal.Rptr. 677, 750 P.2d 318.) The Commission denied the claim, finding that, although increased costs had been imposed on the districts, section 59300 did not establish a new program or increased level of service. (Lucia Mar, supra, 44 Cal.3d at p. 834, 244 Cal. Rptr. 677, 750 P.2d 318.) The trial court affirmed the Commission's decision. (Ibid.) The Court of Appeal also affirmed, "reasoning that a shift in the funding of an existing program is not a new program or a higher level of service." (Ibid.)
The Supreme Court reversed the judgment entered in favor of the State. (Lucia Mar, supra, 44 Cal.3d at p. 838, 244 Cal. Rptr. 677, 750 P.2d 318.) The court recognized that "local entities are not entitled to reimbursement for all increased costs mandated by state law, but only those costs resulting from a new program or an increased level of service imposed upon them by the state." (Id. at p. 835, 244 Cal.Rptr. 677, 750 P.2d 318.) The court explained that the term "program," as used in article XIII B of the California Constitution, is "one that carries out the `governmental function of providing services to the public, or laws which, to implement a state policy, impose unique requirements on local governments and do not apply generally to all residents and entities in the state.'" (Lucia Mar, supra, at p. 835, 244 Cal.Rptr. 677, 750 P.2d 318, quoting County of Los Angeles v. State of California (1987) 43 Cal.3d 46, 56, 233 Cal.Rptr. 38, 729 P.2d 202.) Under this definition, the Lucia Mar court concluded that the contributions called for in section 59300 were used to fund a "program," even though the school district was required only to contribute funds to the state-operated schools rather than to administer the program itself. (Lucia Mar, supra, at p. 835, 244 Cal.Rptr. 677, 750 P.2d 318.)
The Lucia Mar court also concluded that the program established by section 59300 was a "new program" insofar as the school district was concerned since, at the time that statute was enacted in 1981, school districts were not required to contribute to the education of their students at such state-operated schools. (Lucia Mar, supra, 44 Cal.3d at p. 835, 244 Cal. Rptr. 677, 750 P.2d 318.) The court further held that a shift in funding of an existing program from the state to a local entity constitutes a "new program" within the meaning of section 6, and stated, "The intent of [section 6] would plainly be violated if the state could, while retaining administrative control of programs it has supported with state tax money, simply shift the cost of the programs to local government on the theory that the shift does not violate section 6 ... because the programs are not `new.'" (Lucia Mar, supra, at p. 836, 244 Cal.Rptr. 677, 750 P.2d 318.) The high court directed the trial court to remand the matter to the Commission for a determination of whether section 59300 mandated school districts to make the contributions called for therein in light of the Commission's assertion that school districts had the option under another statute to provide a local program for handicapped children, to send them to private schools, or to refer them to the state-operated schools. (Lucia Mar, supra, 44 Cal.3d at pp. 836-837, 244 Cal. Rptr. 677, 750 P.2d 318.)
The foregoing review of the Lucia Mar decision shows that it does not support appellants' contention that once a school district makes a discretionary decision under section 48915(c) to expel a student, none of the costs of complying with the "downstream" procedures mandated by section 48918, including those that exceed *630 federal due process requirements, are reimbursable under section 6.
In sum, appellants cite no statutory or case law authority that supports their contention that once a school district makes the initial discretionary decision to expel a student under section 48915(c), none of the costs it incurs in complying with the procedural requirements mandated by section 48918, including those that exceed federal due process requirements, are reimbursable under section 6.
As discussed, ante, Government Code section 17561, subdivision (a) provides that the State "shall" reimburse a school district for "all `costs mandated by the state,' as defined in [Government Code section] 17514." (Italics added.) Government Code section 17514, in turn, provides in part that the term "costs mandated by the state" means "any increased costs which a ... school district is required to incur ... as a result of any statute ... which mandates a new program or higher level of service of an existing program within the meaning of [section 6]."[21] (Italics added.) To the extent that section 48918 mandates that the District carry out discretionary expulsions in only one manner by following the procedures set forth therein that exceed federal due process requirements, that statute mandates a "higher level of service" within the meaning of section 6, and thus the costs incurred by the District in complying with those mandated additional procedures are reimbursable to the District.
In conclusion, we hold that, all costs incurred by the District in carrying out mandatory expulsions under section 48915(b) are reimbursable under section 6, and the costs incurred by the District in carrying out discretionary expulsions under section 48915(c) are reimbursable under section 6 to the extent those costs result from hearing procedures mandated by section 48918 that exceed federal due process requirements.

DISPOSITION
The judgment is affirmed.
WE CONCUR: McINTYRE and O'ROURKE, JJ.
NOTES
[1] All further statutory references are to the Education Code unless otherwise specified.
[2] The term "local agency" means "any city, county, special district, authority, or other political subdivision of the state." (Gov.Code, § 17518.)
[3] The term "school district" means "any school district, community college district, or county superintendent of schools." (Gov. Code, § 17519.)
[4] Government Code section 17556 provides in its entirety: "The commission shall not find costs mandated by the state, as defined in Section 17514, in any claim submitted by a local agency or school district, if, after a hearing, the commission finds that: [¶] (a) The claim is submitted by a local agency or school district which requested legislative authority for that local agency or school district to implement the program specified in the statute, and that statute imposes costs upon that local agency or school district requesting the legislative authority. A resolution from the governing body or a letter from a delegated representative of the governing body of a local agency or school district which requests authorization for that local agency or school district to implement a given program shall constitute a request within the meaning of this paragraph. [¶] (b) The statute or executive order affirmed for the state that which had been declared existing law or regulation by action of the courts. [¶] (c) The statute or executive order implemented a federal law or regulation and resulted in costs mandated by the federal government, unless the statute or executive order mandates costs which exceed the mandate in that federal law or regulation. [¶] (d) The local agency or school district has the authority to levy service charges, fees, or assessments sufficient to pay for the mandated program or increased level of service. [¶] (e) The statute or executive order provides for offsetting savings to local agencies or school districts which result in no net costs to the local agencies or school districts, or includes additional revenue that was specifically intended to fund the costs of the state mandate in an amount sufficient to fund the cost of the state mandate. [¶] (f) The statute or executive order imposed duties which were expressly included in a ballot measure approved by the voters in a statewide election. [¶] (g) The statute created a new crime or infraction, eliminated a crime or infraction, or changed the penalty for a crime or infraction, but only for that portion of the statute relating directly to the enforcement of the crime or infraction."
[5] Section 48915(b), as amended by Statutes 1993, chapter 1255, section 2, pages 7284-7285, was effective from October 11, 1993 through December 31, 1993, and provided: "The principal or the superintendent of schools shall immediately suspend pursuant to Section 48911, and shall recommend to the governing board the expulsion of, any pupil found to be in possession of a firearm, knife of no reasonable use to the pupil, or explosive at school or at a school activity off school grounds. The governing board shall expel that pupil or, as an alternative, refer that pupil to an alternative education program, whenever the principal or the superintendent of schools and the governing board confirm that: [¶] (1) The pupil was in knowing possession of the firearm, knife, or explosive. [¶] (2) Possession of the firearm, knife of no reasonable use to the pupil, or explosive was verified by an employee of the school district. [¶] (3) There was no reasonable cause for the pupil to be in possession of the firearm, knife, or explosive." (Italics added.)
[6] Section 48915(b), as amended by Statutes 1993, chapter 1256, section 2, pages 7286-7287, became effective on January 1, 1994, and provided: "The principal or the superintendent of schools shall immediately suspend, pursuant to Section 48911, any pupil found to be in possession of a firearm at school or at a school activity off school grounds and shall recommend expulsion of that pupil to the governing board. The governing board shall expel that pupil or refer that pupil to a program of study that is appropriately prepared to accommodate students who exhibit discipline problems and is not provided at a comprehensive middle, junior, or senior high school or housed at the schoolsite attended by the pupil at the time the expulsion was recommended to the school board, whenever the principal or superintendent of schools and the governing board confirm the following: [¶] (1) The pupil was in knowing possession of the firearm. [¶] (2) An employee of the school district verifies the pupil's possession of the firearm." (Italics added.)
[7] Section 48915(c) was added by Statutes 1983, chapter 498, pages 2031, 2116-2117. That statute, as amended by Statutes of 1992, chapter 909, pages 4224, 4226; redesignated as subdivision (d) by Statutes 1993, chapter 1255, pages 7284-7285; and as amended by Statutes 1994, chapter 1198, pages 7267, 7270-7271, provided: "Upon recommendation by the principal, superintendent of schools, or by a hearing officer or administrative panel appointed pursuant to subdivision (d) of Section 48918, the governing board may order a pupil expelled upon finding that the pupil violated subdivision (f), (g), (h), (i), (j), (k), or (l) of Section 48900, or Section 48900.2 or 48900.3, and either of the following: [¶] (1) That other means of correction are not feasible or have repeatedly failed to bring about proper conduct. [¶] (2) That due to the nature of the violation, the presence of the pupil causes a continuing danger to the physical safety of the pupil or others." (Italics added.)
[8] Subdivisions (f) through (l) of section 48900 provide: "A pupil may not be suspended from school or recommended for expulsion unless the superintendent or the principal of the school in which the pupil is enrolled determines that the pupil has committed an act as defined pursuant to one or more of subdivisions (a) to (q), inclusive: [¶] ... [¶] (f) Caused or attempted to cause damage to school property or private property. [¶] (g) Stolen or attempted to steal school property or private property. [¶] (h) Possessed or used tobacco, or any products containing tobacco or nicotine products, including, but not limited to, cigarettes, cigars, miniature cigars, clove cigarettes, smokeless tobacco, snuff, chew packets, and betel. However, this section does not prohibit use or possession by a pupil of his or her own prescription products. [¶] (i) Committed an obscene act or engaged in habitual profanity or vulgarity. [¶] (j) Unlawfully possessed or unlawfully offered, arranged, or negotiated to sell any drug paraphernalia, as defined in Section 11014.5 of the Health and Safety Code. [¶] (k) Disrupted school activities or otherwise willfully defied the valid authority of supervisors, teachers, administrators, school officials, or other school personnel engaged in the performance of their duties. [¶] (l) Knowingly received stolen school property or private property."
[9] Section 48900.2 provides: "In addition to the reasons specified in Section 48900, a pupil may be suspended from school or recommended for expulsion if the superintendent or the principal of the school in which the pupil is enrolled determines that the pupil has committed sexual harassment as defined in Section 212.5.[¶] For the purposes of this chapter, the conduct described in Section 212.5 must be considered by a reasonable person of the same gender as the victim to be sufficiently severe or pervasive to have a negative impact upon the individual's academic performance or to create an intimidating, hostile, or offensive educational environment. This section shall not apply to pupils enrolled in kindergarten and grades 1 to 3, inclusive."
[10] Section 48900.3 provides: "In addition to the reasons set forth in Sections 48900 and 48900.2, a pupil in any of grades 4 to 12, inclusive, may be suspended from school or recommended for expulsion if the superintendent or the principal of the school in which the pupil is enrolled determines that the pupil has caused, attempted to cause, threatened to cause, or participated in an act of, hate violence, as defined in subdivision (e) of Section 233."
[11] The Commission also found that the other version of section 48915(b) at issue here, as amended by chapter 1255 of Statutes 1993 (discussed, ante), similarly imposed a new program or higher level of service in an existing program within the meaning of section 6 and Government Code section 17514. In the interest of clarity, we reiterate that this second version of section 48915(b) was effective during the limited period from October 11, 1993 through December 31, 1993, and applied in cases in which the disciplined pupil was found to have been in possession of a firearm, a knife of no reasonable use to the pupil, or an explosive at school or at a school activity off school grounds.
[12] The Commission concluded that the costs incurred in providing the following state-mandated procedures under section 48918 were reimbursable: (1) adoption of rules and regulations pertaining to pupil expulsions (§ 48918); (2) inclusion in the notice of hearing of a copy of the disciplinary rules of the District, a notice of the parents' obligation to notify a new school district, upon enrollment, of the pupil's expulsion, and a notice of the opportunity to inspect and obtain copies of all documents to be used at the hearing (§ 48918, subd. (b)); (3) upon request, allowing the pupil or parent to inspect and obtain copies of the documents to be used at the hearing in limited circumstances (§ 48918, subd. (b)); (4) sending of written notice of (i) any decision to expel or suspend the enforcement of an expulsion order during a period of probation, (ii) the right to appeal the expulsion to the county board of education, and (iii) the obligation of the parent to notify a new school district, upon enrollment, of the pupil's expulsion (§ 48918, subd. (i)); (5) maintenance of a record of each expulsion, including the cause thereof (§ 48918, subd. (j)); and (6) the recording of expulsion orders and the causes thereof in the pupil's mandatory interim record and, upon request, the forwarding of this record to any school in which the pupil subsequently enrolls (§ 48918, subd. (j)).
[13] See the background portion of this opinion, ante.
[14] Government Code section 17514 provides in its entirety: "`Costs mandated by the state' means any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute enacted on or after January 1, 1975, or any executive order implementing any statute enacted on or after January 1, 1975, which mandates a new program or higher level of service of an existing program within the meaning of [section 6]." (Italics added.)
[15] Subdivision (c) of Government Code section 17556 provides: "The commission shall not find costs mandated by the state, as defined in Section 17514, in any claim submitted by a ... school district, if, after a hearing, the commission finds that: [¶] ... [¶] (c) The statute or executive order implemented a federal law or regulation and resulted in costs mandated by the federal government, unless the statute or executive order mandates costs which exceed the mandate in that federal law or regulation." (Italics added.)
[16] See text of Government Code section 17556 in footnote 4, ante.
[17] Code of Civil Procedure section 1263.510 provides: "(a) The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill if the owner proves all of the following: [¶] (1) The loss is caused by the taking of the property or the injury to the remainder. [¶] (2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill. [¶] (3) Compensation for the loss will not be included in payments under Section 7262 of the Government Code. [¶] (4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner. [¶] (b) Within the meaning of this article, "goodwill" consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."
[18] Code of Civil Procedure section 1230.030 provides: "Nothing in this title requires that the power of eminent domain be exercised to acquire properly necessary for public use. Whether property necessary for public use is to be acquired by purchase or other means or by eminent domain is a decision left to the discretion of the person authorized to acquire the property." (Italics added.)
[19] The Court of Appeal in City of Merced explained that "[u]ntil enactment of chapter 1275, Statutes of 1975, goodwill was not compensable in eminent domain proceedings. [Citation.]" (City of Merced, supra, 153 Cal. App.3d at p. 782, fn. 2., 200 Cal.Rptr. 642.)
[20] During oral argument, counsel for the Department conceded that prior to enactment of the test claim statutes at issue in the instant appeal school districts were not required by state statute to follow specified procedures in carrying out student expulsions.
[21] See text of Government Code section 17514 in footnote 14, ante.